**George LANES, Plaintiff-Appellee and Cross-Appellant,**

v.

**Timothy O'BRIEN, State Auditor of the State of Colorado; the State Personnel Board of the State of Colorado; Randall C. Mustain-Wood, Jan Knoop, B.A. Arguello, Raymond C. DeLisle, and Tucker K. Trautman, as Members of the State Personnel Board, Defendants-Appellants and Cross-Appellees.**

No. 85CA0900.

Colorado Court of Appeals,
Div. III.

July 2, 1987.

Rehearing Denied July 30, 1987.

Certiorari Denied Nov. 30, 1987.

Mangan & Katz, Thomas J. Mangan, Lawrence Katz, Denver, for plaintiff-appellee and cross-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice G. Knaizer, First Asst. Atty. Gen., Denver, for defendants-appellants and cross-appellees.

CRISWELL, Judge.

Plaintiff, George Lanes, was dismissed from his position in the office of the State Auditor (Auditor) under circumstances which he claimed violated the provisions of Colorado's so-called "Whistleblower Act," § 24-50.5-101, et seq., C.R.S. (1982 Repl. Vol. 10). A hearing officer of the State Personnel Board (Board) agreed with him and ordered his reinstatement with back pay. The Board set the hearing officer's decision aside and upheld Lanes' dismissal. He sought review in the district court, which entered a judgment setting aside the Board's decision and reinstating the hearing officer's decision. The Board and the Auditor appeal that judgment and Lanes cross-appeals. We affirm in part and reverse in part.

Lanes was initially employed with the Department of Revenue (Revenue) in early 1977. While so employed, he was assigned to review that department's cash management practices, which review disclosed that there were substantial delays (sometimes several weeks) between the time that checks were received by that department and the time that they were deposited in a bank. As a result, it was estimated that, during the year 1977 alone, the state lost in excess of one million dollars in interest which it would have earned had Revenue made bank deposits in a timely fashion.

In addition, in the Liquor Enforcement Division (Division) of Revenue, Lanes detected what he considered to be a pattern of late deposits for certain, specified taxpayers, whose checks for substantial sums were customarily delayed in being deposited. Lanes issued his initial report detailing these findings in May 1978. A short while later, another Revenue employee who conducted a similar investigation reached essentially the same conclusions.

Although Lanes made recommendations to correct these deficiencies, Revenue took no actions upon his recommendations. Moreover, in August 1978, Revenue's budget request to the General Assembly implied that, except in peak periods, Revenue was depositing all funds received within a 24-hour period—a representation which both Lanes and, later, the Auditor considered to be untrue.

In early 1979, since Revenue had not adopted his recommendations for changes, Lanes contacted a state legislator who, after conferring with him, arranged for Lanes to meet with the General Assembly's

Legislative Audit Committee (LAC). Primarily as a result of Lanes' presentation to it, the LAC directed the Auditor to perform a special audit of Revenue's cash management policies for the preceding fiscal year.

Lanes was transferred from Revenue to the Auditor's office in September 1979, at which point Lanes ceased to be responsible for reviewing Revenue's practices, because of the Auditor's policy that a former employee of a department should not be involved in any audit of that department. Nevertheless, Lanes continued to be interested in the subject and continued to discuss the matter with the Auditor and with others involved in the audit.

The Auditor later issued three reports to the LAC, the last one being issued in October 1979. All of these reports concluded, as Lanes had previously determined, that there had been serious delays in the deposit of funds by Revenue and that that department had not undertaken steps to rectify the problem. The first two of these reports, however, concluded that there was no evidence of any fraud; the third report omitted any mention of fraud—an omission which the Auditor attributed to inadvertence.

Lanes was not satisfied with the Auditor's reports, primarily because he felt that the Auditor's staff had failed to pursue possible fraud with respect to Revenue's delayed deposits. He also felt that LAC should have been advised of Revenue's mispresentation in its prior budget request, of the possible pattern of delayed deposits for certain licensees, and of other subjects not mentioned in any of the Auditor's reports. On several occasions, Lanes expressed these views to the Auditor and other staff members responsible for the special audit reports. When asked to provide further documentary evidence of any fraud, however, Lanes was unable to do so.

During the time that Lanes was employed in the Auditor's office, an employee regulation required all of that office's employees to "refuse to discuss audit activities and/or final reports with news reporters unless authorized by the State Auditor." Nevertheless, in late 1979, Lanes wrote a letter to a newspaper relating his concerns about the problems in Revenue and the Auditor's investigation. As a result, the Auditor issued to Lanes a written "formal corrective action," and warned him against making any statements to the news media or to any other persons outside the office.

In February 1980, Lanes caused a letter to be delivered to each member of the General Assembly enclosing a copy of a letter he had written to the Deputy State Auditor. In his letter to the General Assembly members, he noted that he had previously discovered a "one million dollar mismanagement problem" in Revenue, which was continuing, and that, while the "powers that be" were trying to make him keep his "mouth shut," he solicited the General Assembly's aid in rectifying the problem. In his letter to the Deputy State Auditor, he alleged that the ongoing audit activities were not designed to "uncover fraud;" that a "leak" had informed him that the staff members in the Auditor's office were "not supposed to find anything;" that he had been prevented from communicating with the Governor; and that the Auditor had informed him that the Governor had decided "not to do anything to" the then Director of Revenue.

On the day following Lanes' delivery of these two documents, the Auditor terminated his employment, based on his "failure to comply with the work standards" set forth in the referenced regulation and the previous corrective action letter. Lanes protested his termination, claiming that his dismissal violated the so-called "Whistleblower Act."

The hearing officer who heard Lanes' appeal concluded that his disclosure of information to the General Assembly was a disclosure protected by the pertinent statute; that, prior to communicating with the General Assembly, Lanes had made reasonable and good faith efforts to communicate concerning the subjects with his supervisor and the appointing authority; that there was a reasonable factual foundation for Lanes' assertions; and that Lanes, in good faith, believed the facts asserted to be true.

Consequently, the hearing officer concluded that Lanes' dismissal was in violation of § 24–50.5–103, and, as a part of the remedy, he ordered that Lanes be reinstated to his former position and that he receive back pay and related employee benefits and reimbursement for all reasonable attorney fees and related costs incurred by him. The Board reversed the hearing officer's decision, however, concluding that the Whistleblower Act did not apply to Lanes' situation.

The district court reviewed the record of the proceedings pursuant to § 24–4–106, C.R.S. (1982 Repl. Vol. 10), reversed the Board's decision, and awarded Lanes' attorney fees incurred in the proceedings before it. We are in essential agreement with most of the trial court's legal conclusions.

## I.

Section 24–50.5–103(1), C.R.S. (1982 Repl. Vol. 10) provides that:

"no appointing authority or supervisor shall initiate or administer any disciplinary action against [a state] employee on account of the employee's disclosure of information."

In its decision in this case, the Board concluded that the Whistleblower Act was inapplicable to Lanes' dismissal, because the statute does not protect an employee of one state agency in making disclosures about another state agency, and because Lanes' termination resulted from his violation of the Auditor's policy which prohibits staff employees from discussing audit activities with persons outside that office, rather than from his disclosure of information.

The trial court concluded, however, that the Board's interpretation of the statute was erroneous as a matter of law, and we agree.

## A.

In its decision, the Board "found no evidence in the record which would indicate that the action taken by the appointing authority was in any way retaliatory for [Lanes'] disclosure of information." This "finding," however, was reflective of the Board's view of the Whistleblower Act and was not a comment upon the state of the evidentiary record. Indeed, the Board did not purport to disturb any of the hearing officer's evidentiary findings.

The record evidence here is undisputed that Lanes was terminated because of his distribution of the two letters in purported violation of the Auditor's regulation and previous instructions. Thus, this record does not give rise to any "dual motive" dispute, such as was involved in *Mount Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and *Ward v. Industrial Commission*, 699 P.2d 960 (Colo.1985), where, in each case, the employee had committed several alleged derelictions and the question was whether a particular act on his part played a substantial role in his discharge. It is admitted here, in contrast, that Lanes' employment was terminated because of his act of communicating with the General Assembly members and for no other reason.

The issue presented, then, is not a question of fact as to the appointing authority's motive; that fact is undisputed. The issue relates to the reach and the proper interpretation of the pertinent statute.

The Board concluded that the Auditor did not retaliate against Lanes in violation of the statute because that statute does not protect the employee of one state agency in disclosing information about another agency and because Lanes' disclosures related only to Revenue, an agency by whom he was not employed.

Since these conclusions depend upon resolution of a question of law, they were, at least, "ultimate conclusions of fact" under § 24–4–105(15)(b), C.R.S. (1982 Repl. Vol. 10), which is made applicable to these proceedings by § 24–50.5–104(2). Hence, such conclusions need both record support and a reasonable basis in law. *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982); *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981).

A statute must be interpreted in light of its legislative intent and purpose. *Beth Israel Hospital & Geriatric Center v. Dis-*

*trict Court,* 683 P.2d 343 (Colo.1984). In adopting the Whistleblower Act, the General Assembly declared that the people of this state are entitled to information about the workings of their state government, in order to reduce waste and mismanagement of funds, and that:

"employees of the state of Colorado are citizens first and have a right and a responsibility to behave as good citizens in our common efforts to provide sound management of governmental affairs. To help achieve these objectives, the general assembly declares that state employees should be *encouraged* to disclose information on actions of state agencies that are not in the public interest and that legislation is needed to ensure that *any* employee making such disclosures shall not be subject to disciplinary measures or harassment by *any* public official." Section 24–50.5–101, C.R.S. (1982 Repl. Vol. 10) (emphasis supplied).

Consequently, § 24–50.5–103 provides that "no appointing authority or supervisor" shall impose any disciplinary action on account of an employee's disclosure of information. Under this statute, the protected disclosure may relate to:

"*any* action, policy, regulation, practice, or procedure, *including, but not limited to* the waste of public funds, abuse of authority, or mismanagement of *any* state agency." Section 24–50.5–102(2), C.R.S. (1982 Repl. Vol. 10) (emphasis supplied).

"State agency" is defined as:

"*any* board, commission, department, division, section, or *other* agency of the executive, legislative, or judicial branch of state government." Section 24–50.5–102(4), C.R.S. (1986 Repl. Vol. 10) (emphasis supplied).

■ Nowhere within this act is there to be found any provision which would suggest that its protection is to be extended only to an employee disclosing information about the agency with which he is employed. Thus, not only does the substantive language of this statute fail to support the Board's interpretation of its provisions, but the Board's efforts to restrict a state employee from providing information to the People's elected representatives pays too niggardly a regard to its very underlying purposes. The Board's interpretation, therefore, does not possess a reasonable basis in law. *See Lee v. State Board of Dental Examiners, supra.*

### B.

The Board also concluded that Lanes' termination resulted from his "action of *distributing* letters" and not from "the information contained in said letter (sic)." (emphasis in original) If such a distinction can be drawn in this case, however, it is one without a difference.

Neither the regulation nor the Auditor's written corrective action prohibited all communications with persons outside the department. The prohibition was against dissemination of information relating to "audit activities and/or final reports." Any distribution of a letter to the members of the General Assembly which did not relate to such subjects would not have violated the regulation and could not have provided a foundation for any disciplinary action.

■ It was, therefore, the *content* of Lanes' letters, including information relating to "audit activities," which furnished the basis for his termination. Hence, it is clear, as a matter of law, that it was the distribution (disclosure) of letters containing information relating to such subjects that was the cause of Lanes' termination. And, to the extent that the regulation or policy against such disclosure conflicts with the provisions of the statute, that regulation and policy are unenforceable. *See Gasparinetti v. Kerr,* 568 F.2d 311 (3d Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978) (regulation of police department prohibiting public disparagement of department policies facially invalid as being violative of First Amendment).

We conclude, therefore, that the articulated bases for the Board's decision are not supported by substantial evidence in the record and that they lack a reasonable basis in law.

## II.

Although the Board's decision was grounded solely upon the two matters considered above, the Board and the Auditor both now argue that that decision was nevertheless justified by other considerations and, thus, the district court erred in overturning it. We disagree.

### A.

They first argue that, in applying the Whistleblower Act to any disciplinary action taken against a state employee, the Board and the courts must engage in the "balancing test" described in *Ward v. Industrial Commission, supra.* They further claim that, if such a test is applied in this case, Lanes' dismissal was warranted. This argument, however, misperceives the reasons for the application of the test alluded to.

Even without the strictures of any statute, the First and Fourteenth Amendments protect a state employee against adverse action by his governmental employer because of his exercise of the right of free speech, except in those instances where his "expressions undermine the effectiveness of the working relationship or substantially or materially affect such governmental interests as employee competency, administrative efficiency, or co-worker harmony." *Ward v. Industrial Commission, supra.* See *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Durango School District No. 9-R v. Thorpe*, 200 Colo. 268, 614 P.2d 880 (1980). Consequently, whenever the claim is made that a public employee has been unconstitutionally disciplined because of his speech activities, the courts must balance "the claimant's interest in commenting upon matters of public concern and the government's interest in maintaining efficiency in the delivery of services." *Ward v. Industrial Commission, supra.*

■ In striking the proper balance between the two interests, there must be considered such factors as the public importance of the subject matter, the value of the employee's speech in light of his experience and expertise, the extent to which a retaliatory dismissal might result in a limitation upon the public's access to information, and the extent to which any "transitory detriment" to the government agency might be outweighed by the enhancement of its long-term goals by an airing of the employee's concerns. *Johnson v. Jefferson County Board of Health*, 662 P.2d 463 (Colo.1983). See also *Ward v. Industrial Commission, supra; Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

In this case, however, we are required to apply the specific provisions of the Whistleblower Act, rather than the general language of the First Amendment.

That statute delineates the nature of the communications falling within its terms, the communications not covered by it, and the conditions which must be met by any employee seeking protection under its terms. This comprehensive statute, then, reflects a *legislative* balancing of those factors which the General Assembly considered important to a determination of whether a state employee should be protected in his disclosure of information. The balance struck is evidenced by the statute's terms themselves. Consequently, if, as here, the employee's disclosure is made under the conditions prescribed by this statute, there exists no basis for the courts to engraft further conditions upon the protections afforded by it. See *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984) (departmental regulation may impose more stringent standards upon discharge of employees than are constitutionally required).

■ In the *Ward* case, the Supreme Court suggested that the allocation of the burden of proof adopted in *Mt. Healthy City School District v. Doyle, supra*, was a proper approach to allocating the similar burden under the statute. Nothing within *Ward*, however, suggests that, if the employee's activity falls clearly within the specific provisions of the legislation, the judiciary is to remove the statutory protec-

tion based on some perceived need to balance private and governmental interests.

### B.

Defendants also assert that the evidence is clear and undisputed that a portion of the information contained within Lanes' letter was false and, consequently, its disclosure was unprotected. Thus, they argue, again, that the district court erred in setting the Board decision aside. Again, however, the argument is flawed.

■ Section 24–50.5–103(1)(a) removes the statutory protection for an employee who discloses information which he knows to be false or with a disregard for its truth or falsity. In applying this provision to Lanes' communications, the hearing officer considered the statute to require both a good faith belief in the accuracy of the information disclosed and a reasonable foundation of fact for such belief. We accept that conclusion as one having a reasonable basis in law. *See Lee v. State Board of Dental Examiners, supra.*

Applying this statutory standard, the hearing officer found that, while some of the language used by Lanes in his letters might have been emotional and unprofessional, and while the letters contained expressions of opinion as well as of fact, Lanes entertained a good faith belief in the truthfulness of his comments and that belief was supported by a reasonable foundation in fact. We emphasize, moreover, that the Board did not reject the hearing officer's evidentiary findings in this respect.

Our review of this record convinces us that the hearing officer's findings are supported by substantial evidence. Consequently, we are bound by them. *See* § 24–4–106(7) and (11), C.R.S. (1982 Repl. Vol. 10); *DeScala v. Motor Vehicle Division,* 667 P.2d 1360 (Colo.1983).

### III.

The Board and the Auditor also now argue that, if the trial court's substantive conclusions are to be approved, nevertheless, this matter should be remanded for the Board to consider the "appropriate re-

lief" to be granted to Lanes. We agree in part only.

### A.

Section 24–50.5–104(2), C.R.S. (1982 Repl. Vol. 10) provides that, if it is determined by the Board that an employee has been disciplined in violation of the Whistleblower Act:

"the board shall order the appropriate relief, including, but not limited to, reinstatement, back pay, restoration of lost service credit, and the expungement of the records of the employee who disclosed information...."

Based upon this statutory provision, the hearing officer's decision required Lanes to be reinstated to his former position, or to a comparable position, and that he receive full back pay and benefits. That decision made no provision for the deduction from the back pay award of any compensation earned by Lanes in the interim between the date of his dismissal and the time of his reinstatement. Likewise, the trial court's order, directing that the hearing officer's decision be reinstated, made no comment upon this subject.

■ When an employee is wrongfully terminated, he is entitled to receive an amount of damages which will make him whole; he is not entitled to any windfall. *Department of Health v. Donahue, supra.* Thus, when an employee is awarded back pay, there must be deducted from such award the compensation which the employee earned from other sources after his termination which, but for such termination, he would not have earned. We agree, therefore, that the Board, upon remand, should determine the amount of pay, including subsequent increases, Lanes would have earned between his dismissal and reinstatement and to deduct therefrom compensation actually received by Lanes during such period, which he would not have otherwise earned.

### B.

The Board and the Auditor also argue that actions taken by Lanes since his termi-

nation have rendered his reinstatement inappropriate. In support of this assertion, they supplied to the trial court copies of letters allegedly written by Lanes after his termination. These documents form no part of the administrative record in this case. *See Harris v. District Court*, 655 P.2d 398 (Colo.1982). However, based upon this purported showing, we are asked to remand this matter to the Board for its consideration of another appropriate remedy. We decline this invitation.

■■■ In a proceeding to review agency action under § 24–4–106, C.R.S. (1982 Repl. Vol. 10), the reviewing court is limited to a consideration of the record made before that agency. *See Harris v. District Court, supra; Colorado Springs v. District Court*, 184 Colo. 177, 519 P.2d 325 (1974); *Civil Service Commission v. Doyle*, 174 Colo. 149, 483 P.2d 380 (1971). Moreover, Lanes' termination became effective in February, 1980—more than seven years ago—and the ensuing time has been consumed in administrative and judicial appeal proceedings. At no time while those proceedings were pending did either the Board or the Auditor request an order of limited remand so that a proper supplemental record could be made upon the subject of Lanes' later actions, while allowing this appeal to proceed in due course. To enter an order authorizing a reconsideration of the remedy to be granted to Lanes now would raise the spectre of another full round of administrative and judicial proceedings before Lanes could be provided with any relief from a violation of this state's public policy. Under these circumstances, the entry of such an order, in our view, would be unconscionable.

We shall, therefore, affirm the trial court's judgment and direct Lanes' reinstatement and receipt of back pay and benefits, subject only to a determination of the amount of back pay involved, as already noted. In doing so, we do not pass upon the question whether any of Lanes' actions subsequent to his termination would provide a warrant for any further administrative or judicial action.

## IV.

■■■ Finally, it is argued that the district court erred in upholding the hearing officer's award to Lanes of attorney fees incurred in the administrative proceedings and of the court's award to him of such fees for his prosecution of the judicial proceedings. We agree that such awards were not authorized.

■■■ Section 24–50.5–104(2) directs the Board to reimburse any employee who is disciplined in violation of the Whistleblower Act for "any costs" incurred in the resulting administrative proceedings. The term "costs" normally does not include attorney fees. *See Leadville Water Co. v. Parkville Water District*, 164 Colo. 362, 436 P.2d 659 (1967).

Further, a review of the legislative history of this statute, as reflected in the transcript of the hearing on April 18, 1979, before the House Committee on State Affairs on H.B. 1582, indicates that, as originally drafted, the legislation called for an award of both costs and attorney fees to an employee against whom improper disciplinary action was taken. The provision for attorneys fees was deleted before the bill was reported to the full House, however, and no similar provision was ever subsequently adopted. Under these circumstances, we conclude that the Whistleblower Act does not authorize an award of such fees.

Section 24–50–125.5, C.R.S. (1982 Repl. Vol. 10) authorizes an award of attorney fees when a discharged state employee successfully appeals the discipline imposed upon him, if there is a finding that the personnel action "was instituted frivolously, in bad faith, maliciously, as a means of harassment or [was] otherwise groundless." However, the hearing officer did not make any finding that the action against Lanes fell within any of the criteria enumerated in this statute. Hence, we conclude that this provision does not present a basis for an award to Lanes of his attorney fees.

Finally, the district court relied upon the provisions of § 24–50.5–105, C.R.S. (1982

Repl. Vol. 10) for its award of fees. That statute, however, applies only to an employee not in the state personnel system or when a finding of no reasonable cause under § 24–50.5–104(1) is made, so that there is no resulting administrative hearing. In such an instance, the employee may initiate a civil action in the courts and, if successful, recover "damages." Even if we were to assume that such damages might include attorney fees, here, Lanes was under the state personnel system and there was a finding of reasonable cause that resulted in an administrative hearing; thus, that statute is also inapplicable.

Hence, we conclude that there was no legal basis for the award of any attorney fees in this case.

## V.

Section 24–50.5–106, C.R.S. (1982 Repl. Vol. 10) provides that, whenever the Board determines that there has been a violation of the Whistleblower Act involving the disclosure of information concerning waste of public funds or mismanagement, a copy of the investigative report prepared by the personnel director under § 24–50.5–106 is to be transmitted to the Auditor. The Auditor is then required to conduct such investigation as might be required under § 2–3–101(3)(e), C.R.S. (1980 Repl. Vol. 1B).

 Lanes argues on his cross-appeal, however, that, since the Auditor is himself involved in this matter, this court should appoint an independent auditor to conduct this investigation. We decline to do so.

Quite aside from the question of this court's authority to undertake an action of the nature requested, such appointment is unnecessary in this case. Section 24–50.5–106 does not require the Auditor to perform any investigation, except in accordance with § 2–3–101(3)(e). Under this latter statute, he is to perform such investigations as he may be directed by the LAC. If the LAC is of the view that an investigation is warranted in this case and that it would be inappropriate for the present Auditor to conduct it, it has the authority, or the means of acquiring such authority from the General Assembly, to obtain the servic-es of an independent auditor. That decision should be one made by LAC, however, not by this court.

That part of the district court's judgment approving the hearing officer's award of attorney fees and awarding attorney fees for the proceedings before that court is reversed; in all other respects, the judgment is affirmed, and the cause is remanded to the district court with directions to remand it to the Board to determine the amount of back pay and benefits to which Lanes is entitled, and for the entry of orders consistent with the views expressed herein.

VAN CISE and STERNBERG, JJ., concur.