**HANOVER SCHOOL DISTRICT NO. 28, in the County of El Paso and State of Colorado, Petitioner.**

v.

**Bruce W. BARBOUR, Respondent.**

**No. 06SC446.**

Supreme Court of Colorado, En Banc.

Nov. 5, 2007.

As Modified on Denial of Rehearing Dec. 3, 2007.*

* Justice Rice and Justice Eid would grant the Petition.

Semple, Miller, Mooney, and Farrington, P.C., Patrick B. Mooney, Stephen G. Everall, Denver, Colorado, Attorneys for Petitioner.

Colorado Education Association, Sharyn E. Dreyer, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

In this appeal, we review the court of appeals' opinion in *Barbour v. Hanover School District No. 28*, 148 P.3d 268 (Colo. App.2006). There, the court of appeals affirmed a judgment in favor of plaintiff, Bruce W. Barbour ("Barbour"), awarding reemployment, back pay, and other damages for the failure on the part of Hanover School District Board of Education ("Board") to comply with the requirements of the Teacher Employment, Compensation, and Dismissal Act ("TECDA"). § 22–63–203(3), C.R.S. (2007).

We affirm the court of appeals' holding that the Board failed to provide Barbour proper notice that his 2003–2004 employment contract would not be renewed. We also affirm the court's holding that Barbour was not obligated to mitigate damages. However, we reverse the court of appeals' holding that Barbour be reemployed for the 2006–2007 school year or any subsequent year. Instead, we conclude that Barbour is deemed reemployed for the 2004–2005 school year and therefore the Board must compensate him for back pay and benefits lost during that school year.

## I. Facts and Procedural History

Barbour was a probationary teacher employed by the Board on a year-to-year basis. His contract for the 2003–2004 school year was to expire on June 1, 2004. On April 7, 2004, the Board held a special meeting to discuss various items, including the renewal of probationary teachers. The first few moments of the meeting were held in public, then the Board moved into executive session. No minutes of the executive session were taken and the topics of discussion for the executive session were not publicly announced prior to the meeting. While in executive session, the Board discussed whether to renew Barbour's 2003–2004 employment contract for the 2004–2005 school year.

The next day, the Board superintendent sent Barbour a memorandum entitled "Letter of Intent," which stated in its entirety, "I regretfully must inform you that the Hanover Board of Education does not plan to offer you a teaching contract for the 2004–2005 school year."

Barbour requested a meeting with the Board superintendent to discuss the reasons for the Board's proposed plan not to renew his contract. Barbour was told that the Board planned to dismiss him but that the final vote would not be held until the Board met in May.

On May 18, 2004, the Board held a special public meeting to discuss various agenda items including teacher retention. At this meeting, the Board publicly adopted a motion to renew all probationary teachers contracts with the exception of Barbour's contract. Eight days later, in another special meeting open to the public, the Board unanimously approved the reissue of all revised teacher contracts for the 2004–2005 school year, with the exception of Barbour's contract, which was not renewed.

The Board did not notify Barbour after either the May 18 or May 26 meetings that action had been taken regarding the renewal of his employment contract. Barbour did not request clarification as to his status but instead retained counsel. Barbour's attorney then contacted the Board on or about June

14, 2004, demanding that Barbour be reemployed for the 2004–2005 school year. The Board declined to reemploy Barbour. Subsequently, Barbour secured employment in the Falcon School District. While paying more than his position at Hanover Junior–Senior High School, the change of employment meant an increase of seventy-seven miles to Barbour's daily commute and his loss of three federal and private grants.

On August 23, 2004, Barbour filed suit alleging that the Board could not terminate him because it failed to properly notify Barbour that his contract was not being renewed, as required by the TECDA.[1] One month later, on September 21, 2004, the Board met and voted in public session to ratify its previous decision not to renew Barbour's 2003–2004 contract, and also not to renew Barbour's 2004–2005 contract, if the court found that such a contract existed. The next day, the superintendent sent a letter notifying Barbour of the ratification of its earlier decision not to renew his contract and its decision not to renew his 2004–2005 contract for the 2005–2006 school year. The September 22, 2004 letter states in part:

> The Hanover School District Board of Education has adopted a resolution ratifying its previous nonrenewal of your employment contract and nonrenewing any contract or contract right you may now have regarding employment with the school district.

This letter was Barbour's first formal notice that any contract he had with the Hanover School District was not renewed. When, in the spring of 2005, Barbour's attorney questioned whether a contract between the Board and Barbour still existed, the Board instructed the superintendent to send Barbour another letter, confirming that his 2004–2005 contract was not renewed. On May 25, 2005, the superintendent mailed this second letter to Barbour. Barbour confirmed that he received this letter prior to the June 1 automatic contract renewal deadline.

Barbour moved for summary judgment regarding the lack of notice, claiming that the Board's failure to notify him after the May

26, 2004 Board meeting, where the Board voted not to renew his contract, violated section 22–63–203(3). The trial court granted Barbour's motion for summary judgment on the question of whether the Board gave proper notice that Barbour's contract would not be renewed. The trial court found that the Board's discussion regarding whether to renew Barbour's 2003–2004 employment contract for the 2004–2005 school year was not a formal decision and "could not have caused" the letter of intent to be sent. Because the superintendent's letter of intent came as a direct result of the April 7 executive session and not a public meeting, the court concluded that Barbour never received notice that his contract was not renewed.

A subsequent bench trial was scheduled to determine remedies. In preparation for this trial, the parties stipulated to several facts. First, they stipulated that the Board voted not to renew Barbour's employment contract on May 26, 2004, but no written notice of his renewal status was sent to Barbour prior to the June 1 deadline, as required under section 22–63–203(3). The parties also stipulated that the Board met in open session and adopted a resolution in September 2004 ratifying its earlier decision not to renew Barbour's 2003–2004 contract and not renewing his 2004–2005 contract if the court found that such a contract existed. The parties further stipulated that written notice of the Board's adoption of this resolution was provided to Barbour in September 2004. Finally, the parties stipulated that an additional letter, notifying Barbour that he was terminated for the 2005–2006 school year, was sent to Barbour in May 2005.

After the bench trial, the court awarded Barbour back pay in the amount he would have earned while working for the Hanover School District for the 2004–2005 school year, reimbursement and indemnification for two federal grants and one private grant Barbour received while employed by Hanover, commuting costs to and from Barbour's new place of employment, and reinstatement for the 2005–2006 school year as a probationary teacher. The Board appealed.

---

1. Barbour requested both injunctive and declaratory relief. He also claimed breach of contract and sought damages arising from the statutory violation.

The court of appeals affirmed the trial court's ruling, holding that the superintendent's letter of April 8, 2004, was legally insufficient to provide proper notice that Barbour's contract would not be renewed because it did not result from a properly held public meeting. In addition, the court of appeals determined that the Board failed to provide Barbour written notice of its decision not to renew Barbour's contract at the May 18 and May 26 meetings. Thus, the Board violated section 22–63–203(3), which mandates timely, written notification that the contract is not renewed, when it failed to provide Barbour written notice that his 2003–2004 employment contract would not be renewed for the 2004–2005 school year. As for relief under the statute, the court of appeals affirmed the trial court's awards including full back pay and benefits for the 2004–2005 school year. Although the trial court ordered reemployment for the 2005–2006 school year because the 2004–2005 school year had already begun and litigation was ongoing, the court of appeals went further, returning the case to the trial court with an order that Barbour be rehired for the 2006–2007 school year because the appeal extended into the 2005–2006 school year.

The Board petitioned for certiorari on three issues.[2] The Board did not appeal the court of appeals' rulings affirming reimbursement of the lost federal grants and commuting costs. We granted the petition to review the decision of court of appeals.

## II. Analysis

First, the Board argues that section 22–63–203(3) does not require a second written notice after the teacher is given written notice of the Board's intention not to renew his teaching contract. Second, the Board claims that Barbour should not be allowed to receive full back pay without offset of his earnings from alternative employment. Finally,

the Board challenges the court of appeals' finding that the language of section 22–63–203(3) requires that the Board rehire Barbour.

We first explain that the Board's determination that Barbour's contract not be renewed while in executive session violated the Open Meetings Law and is thereby not binding. Next, we consider whether the Board has complied with the statutory requirement of written notice of a decision by the Board not to renew Barbour's contract. Finally, we determine the remedies available to Barbour in the absence of adequate notice.

### A. Open Meetings Requirement

The Open Meetings Law was conceived to "afford the public access to a broad range of meetings at which public business is considered." *Benson v. McCormick*, 195 Colo. 381, 383, 578 P.2d 651, 652 (1978). We have read these provisions to give citizens "a greater opportunity to become fully informed on issues of public importance so that meaningful participation in the decision-making process may be achieved." *Cole v. People*, 673 P.2d 345, 347 (Colo.1983).

■ Open meetings are those meetings that concern matters related to the policy-making function of that body. *Colo. Civil Rights Comm'n ex rel. Ramos v. Regents of the Univ. of Colo.*, 759 P.2d 726, 733 (Colo. 1988). The Open Meetings Law requires that any meeting of a public body where formal action is taken must be open to the public. § 24–6–402(2)(b), C.R.S. (2007). Specifically, section 24–6–402(2)(b) states that:

> All meetings of a quorum or three or more members of any local public body, whichever is fewer, at which any public business is discussed or at which any formal action

2. We granted certiorari for the following issues:
1) Whether a school district is required by section 22–63–203(3), C.R.S. (2006), to give a nonrenewed probationary teacher a second written notice after the teacher has been given a written notice of intention to nonrenew and has had actual notice of the nonrenewal.
2) Whether a probationary teacher who has been improperly nonrenewed is entitled to re-

cover full back pay without offset of earnings from alternative employment.
3) Whether a court may order the reemployment of a probationary teacher after the term of his contract has ended and he has been awarded a damages remedy for the school district's failure to employ him for the contract term.

may be taken are declared to be public meetings open to the public at all times. § 24–6–402(2)(b).

Upon a two-thirds vote of the members, however, the local public body may meet in a private, executive session. § 24–6–402(3). While in executive session, the members may discuss policies, but they are limited in their policy making authority and may not adopt positions or make formal decisions. *Id.* While section 24–6–402(4) provides a list of topics that may be considered at an executive session, *see* section 24–6–402(4)(a)(h), statutes governing specific local public bodies can limit these topics. For instance, the applicable statute identifying the powers of school boards, section 22–32–108(5), C.R.S. (2007), states that no final policy decisions may be agreed to in executive session:

> All regular and special meetings of the board shall be open to the public.... At any regular or special meeting, the board may proceed in executive session ... but no final policy decisions shall be made by the board while in executive sessions.

§ 22–32–108(5).

We have previously determined that important policy decisions cannot be made informally. *Gavend v. City of Thornton,* 165 Colo. 182, 186, 437 P.2d 778, 780 (1968). In *Gavend,* we held that an informal vote to approve an annexation, made in executive session, was not binding because the formal decisions of a public entity cannot be made in executive session. *Id.* at 780. Similarly, the formal decision not to renew a teacher's contract cannot be made in executive session.

Here, the Board met on April 7, 2004, first in open session and then, for a much longer time, in executive session. The Board concedes that the question of whether to renew Barbour's contract was only discussed in the executive session of the April 7 meeting. Following that meeting, the Board superintendent, acting at the behest of the Board, wrote Barbour a letter entitled "Letter of Intent," which stated in its entirety, "I must regretfully inform you that the Hanover Board of Education does not plan to offer you a teaching contract for the 2004–2005 school year."

The Board does not contend that its actions at the April 7 executive session amount to a policy decision or formal action. The Board agrees that the actual decision not to renew Barbour's contract was not made until the May 18 and May 26 meetings. The Board claims that the letter it asked the superintendent to send Barbour was notice of the Board's intent to act at a later time to terminate his contract. Nevertheless, the Board argues that the superintendent's letter of April 8, 2004, was notice to Barbour that his contract would not be renewed and that "a second notice" was not required by section 22–63–203(3).

■ We agree that any decision not to renew Barbour's contract made by the Board in executive session could have no binding effect. Section 22–32–108(5) prohibits formal action or policy making during executive session. Because the decision not to renew a teacher is a final policy decision that can only be made at a public meeting, any Board actions during the April 7 executive session were inconsequential. Moreover, any and all communications with Barbour arising from that meeting could not have the effect of notifying him of his renewal status.

We reject the Board's contention that despite the lack of effect of any action taken by the Board during the executive session, the superintendent's letter of April 8, 2004 was notice that Barbour's contract would not be renewed, satisfying the notice requirement of section 22–63–203(3).

## B. Notice Required by Section 22–63–203(3)

Although school boards have broad authority to terminate probationary teachers under section 22–63–203(3) when the decision to terminate a probationary teacher is made at an open meeting, a school board must also provide timely, written notice of termination to the teacher. § 22–63–203(3). Failure to provide timely written notice results in the automatic reemployment of the probationary teacher. Section 22–63–203(3) reads in part:

> *A probationary teacher* employed by a school district on a full-time basis *shall be deemed to be reemployed* for the succeed-

ing academic year at the salary that the probationary teacher would be entitled to receive under the general salary schedule ... *unless the board causes written notice to the contrary to be given to said teacher on or before June 1* of the academic year during which said teacher is employed. § 22–63–203(3) (emphasis added). The statute specifies that a writing is timely if a probationary teacher is provided notice that the contract will not be renewed prior to June 1 of the succeeding academic year. In the absence of such notice, the teacher is automatically reemployed by operation of law for the following academic year and is considered employed for the succeeding school year regardless of whether the teacher actually performs work for the school district.

This statute became law in 1990, replacing the then-existing probationary teacher renewal statute, which was identical in substance but enforced a notification date of April 15. While this court has not previously interpreted section 22–63–203(3), it has interpreted the pre–1990 statute. In that case, *School District RE–11J, Alamosa County v. Norwood*, 644 P.2d 13, 18 (Colo.1982), we found that the statute required that timely, written notice of termination be given to the teacher on or before April 15.

*Norwood* concerned the attempted termination of a probationary teacher by verbal advisement. *Id.* at 15. The Alamosa County School Board argued that even absent written notice, the verbal notification coupled with an additional written notice coming several days after the April 15 deadline complied with the statute. *Id.* We were unpersuaded. We held that the plain language of the statute required timely, written notice. *Id.* at 18.

■ In the case before us, the Board gave a written advisement after its April 7 executive session, some six weeks before the renewal decisions were made. No additional written notice was provided to Barbour after the May 26 meeting where Barbour's contract was terminated. The Board contends that the April 8 letter, issued before the renewal decision, fulfilled its obligation to provide proper notice. The letter, entitled "Letter of Intent," states that "the Hanover

Board of Education does not plan to offer you a teaching contract for the 2004–2005 school year." The Board argues that this letter expresses the Board's intent to terminate Barbour's contract at some future time and is thus legally sufficient to meet the statutory requirement that "the Board causes written notice to the contrary to be given ... on or before June 1." § 22–63–203(3). We do not agree.

A school board must provide a probationary teacher with a timely writing stating in clear terms that the board has terminated the contract. This notice must inform the teacher that the Board has made a definitive decision not to renew the teacher for the upcoming school year. Here, the Board, through a letter by its superintendent, notified Barbour only that the Board was, at that point, not planning to renew his contract. Notice of a "plan" to vote at a later time to terminate a contract does not meet the statute's mandate for a timely, written notice of termination. Instead, it is merely notification that the Board may soon decide to undertake the legally sufficient action to formally end the contract. Until that formal action is taken and unequivocal notice of termination is made, the statute requires that the probationary teacher be deemed reemployed. Thus, when the Board failed to provide Barbour written notice that his contract was not renewed, he was reemployed for the 2004–2005 school year.

■ The Board further argues that even if the April 8 letter was insufficient legal notice of termination, the May 18 and May 26 public votes not to renew Barbour's contract, coupled with Barbour's apparent knowledge of his impending termination, complied with the notice requirement. We are unpersuaded.

The essential element of section 22–62–203(3) is timely, written notice of termination following an official vote by the Board. No such notice was provided to Barbour. Despite this, the Board argues that the superintendent's April 8 letter to Barbour, combined with several other factors, rises to compliance with the statute. Among these additional factors are the Board's claims that Barbour had informal notice that his contract

was not renewed in the form of a meeting with the superintendent in the weeks following receipt of the April 8 letter and that Barbour had actual notice of termination through his presence at the May 18 and May 26 school board meetings when the Board terminated his contract—claims that Barbour disputes. Further, the Board argues that these factors serve to ratify the Board's letter of April 8. We disagree and find the Board's claim of compliance without merit.

There can be no compliance with the essential elements of section 22–63–203(3) without timely, written notice of a Board's final decision. Such timely, written notice was not provided to Barbour after the May 26 Board vote. In its absence, the Board cannot now claim that its unofficial writing of six weeks earlier suffices or that various other factors combine to supply the missing timely written notice.

School boards have broad authority to terminate probationary teachers. They must do so within the provisions of section 22–63–203(3), however, including timely, written notice of termination. Here, the Board failed to provide a timely writing and thus cannot claim that its actions rise to compliance or that other factors served to ratify its earlier insufficient notice.

## C. Remedies for Violation of Section 22–63–203(3)

Having found that section 22–63–203(3) requires timely, written notice that Barbour's contract was not renewed following the final vote by the Board, we turn to the remedies due Barbour for the Board's violation of the statute. The Board asks that we overturn the court of appeals' holdings that Barbour receive full back pay without offset of earnings from his alternative employment and that he receive reinstatement at Hanover Junior–High School for the 2006–2007 school year.

The remedy for violating section 22–63–203(3) is the teacher's reemployment for the succeeding school year. Because it was too late to reinstate Barbour for the 2004–2005 school year, the trial court interpreted this statute to require that Barbour be reemployed for the school year following the

court's decision, the 2005–2006 school year. This order was stayed while the court of appeals considered the case. Upon finding for Barbour, the court of appeals also interpreted the statute to require that Barbour be reemployed for the school year following litigation and remanded the case to the trial court to order Barbour's one-year reemployment occur during the 2006–2007 school year.

We must now decide if Barbour is entitled a year of employment after all appeals are completed. We make this decision after considering the Board's September 2004 and May 2005 letters providing Barbour with written notice that his contract would not be renewed for the year following the 2004–2005 school year for which he might be deemed reemployed.

Additionally, we must decide whether the common law principle of mitigation applies to the statutory remedies provided in section 22–63–203(3) to determine whether Barbour's employment with the Falcon School District mitigates his loss, thereby limiting the Board's liability.

## 3. Reemployment for an Additional School Year

Section 22–63–203(3) states that "a probationary teacher employed by a school district on a full-time basis shall be deemed to be reemployed for the succeeding academic year" unless the teacher is given proper notice that the contract is not renewed. § 22–63–203(3). The trial court interpreted this language as requiring Barbour's reinstatement for the 2004–2005 school year. Because litigation was ongoing when the 2004–2005 school year began, however, reinstatement for that school year was impossible. So, the trial court awarded employment for the 2005–2006 school year. This remedy was again delayed when the Board appealed to the court of appeals. In affirming the trial court, the court of appeals went one step further and instructed the Board to employ Barbour for the 2006–2007 year. Now, the Board asks that we overrule the court of appeals and find that reemployment should not be ordered when damages and back pay have been awarded and the Board has given

proper notice of termination for the 2005–2006 school year. We agree with the Board and find that the court of appeals overstepped its authority in ordering the Board to rehire Barbour for the 2006–2007 school year. While we have found that Barbour was deemed reemployed for the 2004–2005 school year, the Board's letters of September 2004 and May 2005, notifying Barbour that he was not renewed for 2005–2006 even if the court found in his favor regarding the 2004–2005 school year, foreclosed the renewal of his existing employment contract for 2005–2006 or beyond. Thereby, the employment mandated by the trial court for the 2005–2006 school year exceeded the authority to provide relief for the 2004–2005 school year. Further, the court of appeals exceeded its authority when it ordered Barbour be employed for the 2006–2007 school year. Instead, we find that the statutory remedy available to Barbour is that he be deemed reemployed for the 2004–2005 school year and that he receive back pay and benefits for the 2004–2005 school year.

The statute implicated by the Board's failure to give notice, section 22–63–203(3), states that in the absence of proper notice "a probationary teacher ... shall be deemed to be reemployed for the succeeding academic year." § 22–63–203(3). The question is what form this "deemed" employment takes and the meaning of the phrase "succeeding academic year." We addressed a similar situation in *Norwood*, 644 P.2d at 18. There, as here, the school board failed to give proper notice that a teacher's contract would not be renewed. The trial court awarded both back pay and reemployment. We affirmed. In his answer brief, Barbour argues that *Norwood* is controlling and requires that this court affirm the trial court's award of both back pay and reemployment.

In *Norwood,* we did not specifically address whether reemployment is required, even years after the violation, when reemployment may no longer be available because the school year at issue has been completed. Moreover, there is no indication in *Norwood* that the Alamosa Board raised the question of whether the reemployment remedy is available beyond the school year at issue by

sending Norwood proper notice that the teacher's contract for the following year would not be renewed. Thus, our opinion in *Norwood* affirmed the court of appeals decision that Norwood was entitled to have been reemployed "for the next academic year," after seven years of litigation, without further clarification. *Norwood* at 18.

■ Here, despite the failure to give notice regarding the 2004–2005 school year, the Board did provide Barbour proper timely notice that his contract would not be renewed for 2005–2006 or future school years. Courts do not have the authority to require reinstatement beyond the school year at issue where, as here, the Board has foreclosed that remedy. Reinstatement is only available where the trial court enjoins the Board's unauthorized termination in time for the school year in question or the Board does not undertake steps to terminate the teacher's contract for the succeeding and all future school years. While reinstatement may not always be possible, the statute makes clear that a wrongfully terminated teacher is nonetheless deemed reemployed.

■ Here, the trial court did not enjoin the Board from terminating Barbour's contract prior to the 2004–2005 school year. He was nonetheless "deemed reemployed" for that school year. Further, because the Board's September 2004 and May 2005 letters properly notified Barbour that any and all contractual relationships between him and the Board were terminated, Barbour could not be reemployed beyond the 2004–2005 school year. The 2004–2005 school year having passed, reinstatement was not possible. Consequently, the trial court erred when it awarded Barbour employment for the 2005–2006 school year despite the Board's timely, written notice that, regardless of the litigation outcome, Barbour would not be retained beyond the 2004–2005 contract year. We also find that the court of appeals erred when it exceeded its authority by extending the trial court's order of reinstatement to the 2006–2007 school year.

Thus, we find that Barbour was deemed reemployed for the 2004–2005 school year but that relief in the form of an additional year of employment is not available at this

late date. Although the 2004–2005 school year has passed, Barbour is nonetheless deemed reemployed and the Board is obligated to compensate him in the amount he would have received had he actually worked the 2004–2005 school year for the Hanover School District.

### 4. Mitigation

Finally, we must decide whether full back pay for a teacher who is deemed reemployed after successfully proving that the school board failed to provide proper notice should be reduced by income earned in alternative employment. The Board cites authority from this and other jurisdictions in support of the proposition that the damages owed to Barbour by Hanover School District should be offset by the compensation he received while employed by the Falcon School District. *See Milliken–Dees v. Salem City Sch. Dist. Bd. of Ed.*, 167 Ohio App.3d 536, 855 N.E.2d 932 (2006); *Western Grove Sch. Dist. v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986); *Dep't of Health v. Donahue*, 690 P.2d 243 (Colo.1984). In particular, the Board looks to the general, long-held proposition that in contract disputes between employers and employees, where employees are wrongfully terminated, they have an obligation to mitigate damages. *See Fair v. Red Lion Inn*, 943 P.2d 431 (Colo.1997); *Corfman v. McDevitt*, 111 Colo. 437, 142 P.2d 383 (1943); *Saxonia M. and R. Co. v. Cook*, 7 Colo. 569, 4 P. 1111 (1884).

■ However, the Board's summary of the general principle does not address the statutory remedy provided here and contradicts our only case on point. *Norwood*, 644 P.2d at 17–18. In *Norwood*, we held mitigation is unnecessary in violations of section 22–63–203(3), the statute that governs probationary teacher employment situations. *Id.* While that opinion does not elaborate on the underlying rationale, it specifically concludes that the statutory requirement of an additional year of employment prevails over the common law preference for mitigation. *Id.* The conclusion reached in Norwood that mitigation is inapplicable to violations of the teacher's automatic reemployment statute directly contradicts the result reached in an earlier

decision of the court of appeals in *Robb v. School District No. RE 50(J)*, 28 Colo.App. 453, 455, 475 P.2d 30, 31 (1970), which contained no explanation of this result. *Norwood* is controlling, and we decline to overrule it.

In *Norwood*, the Alamosa County School Board failed to provide timely, written notice that the teacher's contract would not be renewed. *Norwood*, 644 P.2d at 17. We held that the school board must compensate a wrongfully terminated teacher with full back pay without mitigation for a lack of proper notice. We found mitigation was not necessary because the common law obligation to mitigate was superseded by the statute's language requiring automatic reemployment. In the absence of automatic reemployment, we found that the Board was obligated to pay lost wages, regardless of the teacher's success in finding alternative employment. *Id.*

Even if we, like the court of appeals, were inclined to interpret this statute differently today, the fact that the General Assembly has not changed the statute to require mitigation following *Norwood* dissuades us from this approach. For over forty years, some variation of the probationary teacher renewal statute has been state law. During that time, it has never included a mitigation provision for a wrongfully terminated teacher. That is not to say that the General Assembly has lacked the opportunity to include such a provision. Since the statute's adoption in 1963, the General Assembly has amended the specific provision in question over a dozen times, including completely repealing and reenacting the statute in 1990. Three of the aforementioned amendments came in the years immediately following our decision in *Norwood*, and none of those amendments addressed mitigation. Because the General Assembly could easily have overruled *Norwood* on this issue by adding a mitigation requirement in the twenty-five years since we interpreted this statute and has elected not to do so, we believe it would usurp legislative power for us to change our interpretation to require mitigation simply because we might see the statute differently if we were writing on a clean slate today.

Instead, while the statute does not require mitigation, it does provide that the teacher is deemed reemployed even when the teacher's status is determined by litigation that extends past the start of the school year. Thus, when the school year has already started, the statute imposes the legal fiction that the teacher is "deemed reemployed" even though he does not actually work that year. As an employee of the school district, the teacher deemed reemployed is entitled to compensation for the school year for which he did not receive timely written notice. That the teacher successfully finds alternative work is immaterial to the fact that the teacher is deemed employed by the school district and entitled to compensation.

Beyond the statute and our interpretation of it in *Norwood,* we find persuasive policy reasons for not requiring mitigation by a probationary teacher terminated under section 22–63–203(3). If, as here, a school board provided inadequate notice of termination beyond the disputed year and the teacher found alternative employment, the school board could wrongfully-terminate a teacher without repercussion. The statute protects the teacher from a board that fails to give timely notification of termination. It is inconsistent with the purpose of section 22–63–203(3) that a teacher be deemed employed but neither allowed to return to work nor appropriately compensated for the time employed.

Thus, we find that because the statute deems wrongfully terminated teachers as reemployed until such time as they are provided timely notice of termination, the failure by the Board to give Barbour timely notice of termination meant that he was deemed reemployed for the 2004–2005 school year. As a duly employed teacher of the Hanover School District, he was entitled to compensation without working for the school year for which he did not receive timely written notice because the school district did not allow him to return to work as required by the section 22–63–203(3). Further, because he was "deemed employed" by the district, he had no obligation to mitigate the compensation owed to him under section 22–63–203(3). We therefore affirm the court of appeals' holding that Barbour is due one year's salary and benefits for the Board's failure to renew his contract for the 2004–2005 school year.

## III. Conclusion

We affirm the court of appeals' holding that the Hanover School Board failed to give Barbour timely written notice that his contract would not be renewed. However, we reverse the court of appeals' holding that Barbour must be employed for one year after completion of this appeal because the Board provided timely notice of termination for the 2005–2006 school year and instead order that Barbour be paid the appropriate back pay for the loss of the 2004–2005 school year without offsetting those wages by the salary he collected at another school.

Justice EID concurs in part and dissents in part, and Justice RICE joins in the concurrence and dissent.

Justice EID, concurring in part and dissenting in part.

The majority holds that when a school district fails to properly notify a probationary teacher that his or her teaching contract will not be renewed for the following year as required by the Teacher Employment, Compensation and Dismissal Act ("TECDA"), sections 22–63–101 to –403, C.R.S. (2007), the probationary teacher is entitled to compensation in the form of full back pay and benefits without any deduction for income earned in mitigation. The TECDA provides a specific remedy for such insufficient notice—namely, that a probationary teacher is "deemed to be reemployed for the succeeding academic year." We have long held that this remedy renews the probationary teacher's contract for the succeeding academic year by operation of law. In my view, that is all that the statute does. When that renewed contract is subsequently breached by the district, as occurred in this case, the probationary teacher is entitled to ordinary contract remedies. These include specific performance in the form of reinstatement (which the majority correctly concludes is not available in this case) and contract damages. Because mitigation is a longstanding principle of contract damages—a principle that the majority fails

to employ in this case—I respectfully dissent from Part II.C.2 of the opinion.

## I.

Section 22–63–203(3), C.R.S. (2007), states that if a school district does not follow the proper procedures for notifying a probationary teacher that his or her employment contract will not be renewed for the following school year, the probationary teacher is "deemed to be reemployed for the succeeding academic year." As we have long held, this provision creates a new one-year employment contract by operation of law. *Sch. Dist. RE–11J, Alamosa County v. Norwood,* 644 P.2d 13, 14 (Colo.1982) (affirming district court's conclusion that where probationary teacher did not receive timely notice, her "contract for employment was automatically renewed for the [following] school year"); *see also Julesburg Sch. Dist. No. RE–1 v. Ebke,* 193 Colo. 40, 42, 562 P.2d 419, 421 (1977) (The statute "creates a contract by law between the school board and its teachers."); *Marzec v. Fremont County Sch. Dist. No. 2,* 142 Colo. 83, 86, 349 P.2d 699, 701 (1960) (The statute "makes a contract for the parties by operation of the law, where otherwise none would exist.") (citation omitted). Indeed, in his complaint, Barbour acknowledged his rights under the TECDA as contractual, alleging as a claim for relief a breach of contract created by law under the statute based on the Board's insufficient notice and its refusal to rehire him for the 2004–2005 school year.

Today, we affirm the court of appeals' ruling that Barbour received insufficient notice in this case, maj. op. at 228–31; the question then becomes one of remedy. *Id.* at 231. As noted above, the statute provides that the remedy for insufficient notice of non-renewal is the renewal of the probationary teacher's contract by operation of law for a new one-year period. At that point, the probationary teacher has a new one-year contract—but that is all he or she has. The statutory remedy is at its end. If the school district fails to honor that contract, as occurred in this case, the district has breached the contract and ordinary contract remedies apply. These include specific performance

(that is, reinstatement to the probationary teacher's previous position) or contract damages in the form of back pay and benefits.

I agree with the majority that reinstatement is not an option in this case. *Id.* at 231. As the majority points out, the parties were engaged in litigation during the 2004–2005 year, thus ruling out reinstatement during that year, and the Board properly complied with the notice requirements to inform Barbour that he would not be reemployed during the succeeding academic years. *Id.* at 231–32. Because reinstatement is not an option, the majority correctly concludes that damages (in the form of back pay and benefits) are the only remaining remedy in this case. *Id.*

The majority's mistake, in my view, is to omit an important principle of common law contract damages from that remedy—that is, mitigation. Colorado law is clear that breach of employment contract damages are to be offset by earnings from alternative employment. *See, e.g., Fair v. Red Lion Inn,* 943 P.2d 431, 439 (Colo.1997) (holding that injured employee has duty to mitigate damages flowing from breach of implied employment contract by accepting other employment); *Dep't of Health v. Donahue,* 690 P.2d 243, 250 (Colo.1984) (awarding back pay with offset for alternative earnings where probationary employee was discharged without following proper procedures under state personnel rule). Here, the majority awards a contract damages remedy that mistakenly ignores a longstanding component of the common law.

*Robb v. School District No. RE 50(J)* addresses a situation virtually identical to Barbour's. In that case, the plaintiff teacher brought an action against the school district for breach of an employment contract based on the district's alleged failure to properly notify him under the TECDA that his teaching contract was terminated. 28 Colo.App. 453, 455, 475 P.2d 30, 31 (1970). The school district had hired another teacher to fill the position, so reinstatement was not possible. As a result, damages in the form of lost earnings were awarded, but the plaintiff's earnings from his alternative employment were applied as an offset. *Id.* at 461, 475 P.2d at 33. Likewise, as the majority ac-

knowledges, Barbour cannot be reinstated because any right to reinstatement was limited to the 2004–2005 school year. Thus, he is entitled to his lost earnings from that year, but as in *Robb*, those earnings are subject to offset by his substitute income.

## II.

The majority rejects the mitigation principle for three reasons, none of which is persuasive.

First, it takes the position that the statute itself requires full back pay and benefits without mitigation when there has been insufficient notice of nonrenewal. Maj. op. at 232. The statute, however, nowhere states that back pay without mitigation is required as a remedy for insufficient notice. Indeed, the *only* remedy specified by the statute for insufficient notice is the renewal of the teacher's contract by operation of law—that is, the probationary teacher "shall be deemed to be reemployed for the succeeding academic year." The statute simply does not address what happens once the probationary teacher has been awarded a contract renewal by operation of law but the district refuses to honor it. As noted above, the remedy for such a breach is supplied by the common law in the form of specific performance (in the form of reinstatement) or contract damages, including mitigation.

I thus agree with the majority that the TECDA does not mention mitigation, maj. op. at 233, but to me that fact is irrelevant. The statute only creates a new one-year contract by operation of law; it does not provide any remedy for breach of that contract. Contrary to the majority's suggestion, *id.*, there would be no reason for the General Assembly to add a mitigation requirement to a contract damages remedy when the statute does not speak of that remedy in the first place. If common law contract damages apply to a breach of the renewed contract, we need to look at the rules of common law contract damages in their entirety, including mitigation.

Second, the majority relies on our decision in *Norwood*. In that case, the school district sought to terminate the employment of Nor-

wood, a probationary teacher, pursuant to the prior version of the TECDA. However, the written notice of termination did not reach Norwood until after the statutory deadline. 644 P.2d at 14, 16–17. Norwood commenced an action seeking a declaration that "she was automatically reemployed as a teacher for the [subsequent] school year and for a mandatory injunction reinstating her to her teaching position with full fringe benefits, back pay, and all statutory entitlements." *Id.* at 14. The court upheld the trial court's finding that the termination notice was improper under the TECDA and further upheld the award of reinstatement with back pay and fringe benefits. *Id.* at 18.

The vast majority of the court's opinion discusses the timeliness of the district's notice. Its mention of a remedy is limited to two paragraphs at the end of the opinion, which state:

> Finally, the school district asserts that the district court ordered an award of back pay and fringe benefits without any evidence to sustain the order. It predicates this assertion on its misconception that Norwood's action was for a wrongful dismissal and that, therefore, the proper measure of damages is the difference between the teacher's salary and her earnings in mitigation during the period of wrongful discharge.
>
> Petitioner misstates the nature of this declaratory action, *which is not one for damages*, but rather is grounded on the automatic reemployment statute relating to non-tenured teachers and which sought a mandatory injunction reinstating her to the teaching position she held, as provided by the statute. *The award of back pay and fringe benefits follows by operation of law upon her reinstatement.* We find petitioner's argument to be without merit. *Id.* at 17–18 (emphasis added).

Thus, in *Norwood*, we stated that mitigation in that case was not an issue due to the nature of Norwood's *particular* declaratory action, "which [was] not one for damages" but rather sought a reinstatement to the teaching position she held. *Id.* at 18. Norwood actually was reinstated to her teaching position, and her award of back pay and

fringe benefits—presumably for that portion of the year that she had missed—simply "follow[ed] by operation of law upon her reinstatement." *Id.* The *Norwood* court therefore did not—and could not, given the circumstances of the case—reach the question posed here, which is whether mitigation is applicable when reinstatement is not an option and common law contract damages supply the remedy for breach of the renewed contract. Although we rejected the district's characterization of Norwood's claim as one for damages, we did not reject the district's argument that, *had Norwood's action been one for damages,* mitigation would be appropriate. In other words, we rejected the district's description of Norwood's claim (as one for damages), but not its statement of the law that mitigation would have applied had its description of Norwood's claim been correct. In sum, there is no need to "overrule" *Norwood* on this point, as the majority posits, maj. op. at 232; *Norwood* is simply inapplicable.

Importantly, the majority limits *Norwood* to its facts (that is, to situations in which reinstatement is possible in the year following the notice violation) when it addresses the reinstatement issue in this case. Maj. op. at 232. As noted above, in *Norwood,* we awarded both reinstatement *and* full back pay. Here, Barbour contends that he is entitled to just that—back pay for the school year following improper notice, 2004–2005, as well as reinstatement in a subsequent year. The majority properly rejects this view by noting that *Norwood* "did not specifically address" whether reinstatement is required in every case. *Id.* at 232. Ultimately, it holds that Barbour cannot receive both reinstatement and back pay because, unlike in *Norwood,* reinstatement for the year following the notice violation is impossible. *Id.* at 232. In my view, if *Norwood* is to be limited to its facts regarding reinstatement and back pay, it should be so limited in the context of mitigation as well.

The majority rejects mitigation on a third ground: public policy. It concludes that mitigation would allow school districts to give insufficient notice "without repercussion" and leave probationary teachers not "appropri-

ately compensated." *Id.* at 233. In my view, mitigation would lead to neither of these results. The goal of contract damages is to place the plaintiff in the same position he or she would have been in had the breach not occurred—not one that is better or worse. *Donahue,* 690 P.2d at 250; *Lanes v. O'Brien,* 746 P.2d 1366, 1373 (Colo.App.1987). As applied to this case, Barbour got paid more in his alternative employment than what he would have made at Hanover Junior–Senior High School, but "the change of employment meant an increase in Barbour's daily commute of seventy-seven miles and his loss of three federal and private grants." Maj. op. at 226. The appropriate damages remedy for the breach of Barbour's renewed contract would be the difference between what Barbour would have made had he worked at Hanover for a year (including his grant money), and what he did in fact make at his alternative employment (less his increased travel costs). This is "appropriate" compensation for Barbour under longstanding common law contract damages. *See Robb,* 28 Colo.App. at 461, 475 P.2d at 33. It also means that, contrary to the majority's concern, the school district's insufficient notice will have a "repercussion" in the form of a damage award it must pay.

### III.

The statutory remedy for the district's improper notification of Barbour is a one-year contract renewal by operation of law. When the district refused to honor that renewed contract, Barbour's remedy was common law contract damages. Because the majority determines that mitigation-a longstanding principle of contract damages-is inapplicable to this case, I respectfully dissent with respect to Part II.C.2 of its opinion.

I am authorized to state that Justice RICE joins in this concurrence and dissent.