**SCHOOL DISTRICT RE–11J, ALAMOSA COUNTY, Petitioner,**

v.

**Jeannie L. NORWOOD, Respondent.**

No. 80SC90.

Supreme Court of Colorado, En Banc.

April 12, 1982.

John C. McClure, P. C., Gordon J. Bosa, John C. McClure, Alamosa, for petitioner.

Larry F. Hobbs, Denver, for respondent.

LEE, Justice.

We granted certiorari to review the decision of the court of appeals in *Norwood v. School Dist. RE–11J, Alamosa County*, Colo. App., 613 P.2d 343 (1980). We affirm the judgment.

The petitioner, School District RE–11J, Alamosa County (school district), sought to terminate the employment of Jeannie L. Norwood (Norwood), a non-tenured teacher, pursuant to the provisions of section 22–63–110, C.R.S.1973, which provides in pertinent part as follows:

"22–63–110. Automatic reemployment. A teacher employed by a school district on a full-time basis who has not acquired

tenure shall be deemed to be reemployed for the succeeding academic year at the salary which he would be entitled to receive under the general salary schedule *unless the board thereof causes written notice to the contrary to be given to said teacher on or before April 15 of the academic year during which said teacher is employed . . ."* [1] (Emphasis added.)

Norwood had been employed as a non-tenured teacher for the school years 1975–1976 and 1976–1977. The school district refused to continue her employment for the school year 1977–1978. Norwood then commenced an action for a declaration that she was automatically reemployed as a teacher for the 1977–1978 school year and for a mandatory injunction reinstating her to her teaching position with full fringe benefits, back pay, and all statutory entitlements.

Trial was to the court, which found that notice under the statute had not properly been given to Norwood that her contract of employment would not be renewed. The court, therefore, concluded that Norwood's contract of employment was automatically renewed as provided by the statute and judgment was entered in her favor and against the school district. The court of appeals affirmed and we granted certiorari to review that judgment.

The basic facts giving rise to the controversy were not in dispute. On April 12, 1977, Norwood was verbally advised by the school superintendent that her contract for reemployment for the academic year 1977–1978 was not likely to be renewed. Norwood became ill and left school with permission and thereafter was absent from her teaching duties until April 19, 1977. The regular school board meeting was held the evening of April 12 and Norwood attended the meeting, along with others lending support to her position, to seek favorable consideration of her request for reemployment. The school board voted six to one not to

1. Although the statute was amended in 1977, the notice provisions relating to automatic reemployment were not changed. Section 22–63–110, C.R.S.1973 (1981 Supp.).

renew her contract.[2] A written termination notice dated April 13, 1977, signed by the superintendent and addressed to Norwood at the Alamosa High School was prepared. An effort was made to personally deliver the notice to Norwood at the high school, but this failed because of her absence on sick leave.

The next day the notice was mailed by certified mail to Norwood at a wrong street address. Thereafter, the letter was redirected to Norwood's correct address but was not delivered to her until April 16, 1977. The court specifically found that "[T]he evidence did not disclose any effort on the part of [Norwood] to avoid receiving notice save and except that she was ill and did not attend the school from noon on April 12, 1977 through April 15, 1977, inclusive."[3]

Since the notice was not received by Norwood on or before April 15, 1977, the district court concluded that the school district did not give timely written notice of non-renewal of the contract as required by section 22–63–110, C.R.S.1973, and that, therefore, Norwood's contract for employment was automatically renewed for the school year 1977–1978.

I.

█ The school district contends that the court of appeals was in error when it held that the statutory language "causes written notice . . . to be given to said teacher on or before April 15" means that the notice must

have been received by the teacher on or before April 15 of the academic year in question. The district argues that the only reasonable meaning of the statutory words is that the mechanics of the giving of notice must be set in motion by April 15, and that the notice need not be received by the teacher by April 15. In our view the court of appeals correctly construed the statute.

In *Wooten v. School District*, 156 Colo. 89, 396 P.2d 964 (1964), in interpreting the notice requirements of the predecessor automatic reemployment statute, C.R.S. '53, 123–18–8, the language of which was substantially the same as that of the present statute, this court held that oral notice was insufficient and that unless written notice was furnished to the teacher on or before April 15, as required by the statute, the teacher was deemed to be reemployed.[4]

█ It is the general rule that when a statute requires that written notice is to be given, but does not specify how it shall be given, the written notice is not effective until it is received. Thus, any of the various methods of service may be effective provided that the notice is actually received on or before the prescribed deadline. *See generally* 58 *Am.Jur.2d, Notice*, §§ 22 and 23 (1971). Although a statute may authorize service by mail which is generally held to be effective on the date of mailing, *Ford v. Genereux*, 104 Colo. 17, 87 P.2d 749

2. Norwood, with the assistance of William Moore, the Director of San Luis Valley Uniserv, a teachers' association and an affiliate of the Colorado Education Association, filed a written protest, dated April 13, 1977, with the board of education, asserting that the board had failed to follow the district policy in not renewing her contract, in ignoring the high school principal's recommendation that her contract be renewed, and not following the North Central Standards relating to notification and hearing. She requested that the non-renewal vote be disregarded and that she be granted a hearing before the board in accordance with the rules of due process.

Additionally, a letter was written on her behalf by Moore demanding the same relief.

The requested relief was denied.

3. The evidence indicated that Norwood asked a fellow teacher to examine her box at the high school to determine if any notice had been placed in the box during her absence on sick leave, and that Norwood daily examined her mailbox for any notice that might be coming from the school either terminating her employment or rescinding the board action of April 12.

4. C.R.S. '53, section 123–18–8, provides in pertinent part as follows:

"**123–18–8. Automatic re-employment.**—Any teacher in the public schools employed on a full-time basis but not under continuous tenure shall be deemed reemployed for the succeeding year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the 15th day of April of the term of school in which the teacher is employed, . . ."

(1939),[5] the mere mailing of a notice either by ordinary mail, or by certified or registered mail, unless specifically authorized by statute, is not effective until the notice is received. *School District No. 6 of Pima County v. Barber*, 85 Ariz. 95, 332 P.2d 496 (1958); *Cameron v. Shuttleworth*, 75 Ariz. 61, 251 P.2d 659 (1952); *Johnson v. Barreiro*, 59 Cal.App.2d 213, 138 P.2d 746 (1943); *Regan v. Atlantic Refining Co.*, 304 Mass. 353, 23 N.E.2d 869 (1939); *George v. Adamson*, 184 Okl. 289, 86 P.2d 980 (1939); *Board of School Trustees v. Bullock Com. School Dist.*, (Tex.Civ.App.) 37 S.W.2d 829, aff'd (Tex.Com.App.) 55 S.W.2d 538 (1932); *Huntley v. Whittier*, 105 Mass. 391, 7 A.R. 536 (1870). Here, when the school district's effort to personally deliver the notice of non-renewal to Norwood at the high school failed, it elected to effect delivery to her by certified mail. In doing so it misdirected the notice and as a consequence the notice was not actually delivered until after the statutory deadline.

The school district argues, however, that the case of *Ledbetter v. School District No. 8*, 163 Colo. 127, 428 P.2d 912 (1967), controls disposition of the instant case. We do not agree. In *Ledbetter*, service by registered mail was upheld even though the teacher did not actually receive the notice until the 23rd of April. There, although the registered letter containing the notice of non-renewal was misdirected to a wrong address, an attempt by the post office to deliver it to the teacher's proper address was made on April 13. Because of the teacher's absence, the letter could not be delivered. A regularly printed post office notice of registered letter was left at the teacher's home on the 13th and the 18th of April. The teacher neglected to pick up the letter at the post office until the 23rd. Under the facts of *Ledbetter, supra*, this court departed from the rule established in *Wooten v. School District, supra*, that timely notice must be furnished to the teacher. The court followed the rationale of *Robel v. Highline Public Schools*, 65 Wash.2d 477, 398 P.2d 1 (1965), that when service by registered mail is attempted and the letter is properly addressed, registered, and mailed, the notice starts after a reasonable time for transmission and receipt of the notice has elapsed.[6] Significantly, this court stated in *Ledbetter* "that a person cannot benefit from non-compliance which he himself has occasioned." We do not disagree with this statement.

Even the *Ledbetter* rationale, however, does not cure the tardy delivery of notice in the present case. The district court specifically found Norwood did not avoid delivery of the notice, and the misdirected certified letter containing the notice was not delivered to Norwood's residence by the post office until after the statutory deadline.

We limit the holding in *Ledbetter* to the facts of that case which are distinguishable from the present case.

■ We hold that under section 22–63–110, C.R.S.1973, written notice of non-renewal of employment must be delivered to and received by the teacher on or before April 15 of the academic year during which the teacher is employed. We further hold that the timely delivery of the notice to the teacher may be justifiably excused when a teacher frustrates the delivery by purposeful avoidance thereof. The latter event did

---

5. In *Aetna Finance Company v. Summers*, Colo., 926 P.2d 642, (1982), where the issue concerned notice under the Uniform Consumer Credit Code, section 5–5–101, *et seq.*, C.R.S. 1973, we stated "Even though section 111(1) does not require the creditor to prove that the notice was received by the debtor, and permits mailing of the notice as an alternative to actual delivery, the Colorado Consumer Credit Code evidences a legislative intent to provide debtors with notice of default and of their right to cure the default...."

6. In contrast to our statute which is silent as to the mode of service of the notice, in *Robel, supra*, the statute expressly required that "[s]uch notice shall be served upon the employee by certified or registered mail, or to the teacher personally, or by leaving a copy of the notice at the house of his usual abode with some person of suitable age and discretion then resident therein."

not occur in this case as the district court found.

## II.

The court of appeals found no merit to the school district's other assertions of error and did not choose to address them. We agree that they do not require reversal. We discuss them briefly in order.

A. Petitioner argues that we should rule that the school district substantially complied with the statute, citing *Million v. Board of Education of the City of Wichita,* 181 Kan. 230, 310 P.2d 917 (1957), and *Board of Education of City of Eureka v. Jewett,* 21 Cal.App.2d 64, 68 P.2d 404 (1937). No attack was made that the notice was defective or that the contents thereof were not sufficient. The issue here was timeliness and not the sufficiency of the notice. The cases cited by petitioner are inapposite.

■ B. It is next asserted that Norwood waived notice of non-renewal. The record does not support a finding of waiver and the court after hearing all of the evidence concluded otherwise. Norwood in person protested the decision not to renew her contract and filed a written grievance requesting a hearing and a reconsideration by the board of its decision. The board could have reversed its decision prior to the April 15 deadline and Norwood's contract would have automatically renewed under the statute. She daily checked her mail as well as having her school box checked by another teacher. These actions are not consistent with a waiver by her of the statutory right to receive written notice of non-renewal. The record supports the court's conclusion that the school district failed to establish the affirmative defense of waiver.

■ C. Petitioner sought to challenge Norwood's absence from school because of illness contending she was not genuinely ill but was malingering in order to frustrate the school district's attempt to personally serve her with notice. It attempted to subpoena her physician contending that the question of her illness had been injected into the case by her when, on return to her teaching duties on April 19, she presented a physician's certificate that she was able to return to work.[7] The court, on objection of Norwood and after hearing on the district's motion to compel, found there had been no waiver of the physician-patient privilege and, therefore, sustained Norwood's objection. The doctor was not subpoenaed nor did he testify.

We find no reversible error on this ground for the following reasons. The issue of Norwood's illness was raised by the school district and not by Norwood; thus, she did not waive the physician-patient privilege. The district's offer of proof was speculative and insufficient to establish that she was in fact malingering[8] in order to evade personal service of the notice. Moreover, Norwood's absence because of illness was with permission of the district and within her allotted annual sick leave. Furthermore, the record contains no evidence that she was not available at her home for service of the notice during her absence from school on April 13th, 14th, or 15th; indeed, no attempts were made to deliver the notice to her other than the misdirected certified mail. The district court found no conscious evasion of service.

■ D. Finally, the school district asserts that the district court ordered an award of back pay and fringe benefits without any evidence to sustain the order. It

---

7. The Certificate for Return to School or Work stated:
  "Jeannie Norwood has been under my care from 4–12–77 to 4–19–77 and is able to return to work on 4–19 77."

8. The offer of proof was as follows:
  "As an offer of proof as to what we believe Dr. Erickson would testify to and reasonably believe he would testify to in the event the court had not sustained Mr. Hobbs' objection, *it is our belief* that Dr. Erickson would testify that in the event that Miss Norwood did in fact leave her home and go to various places from the 13th through the 15th of April, 1977, that this was not the type of an illness that would be so serious to prevent her from attending school and teaching school during that period of time on the 12th, 13th, 14th and 15th." (Emphasis added.)

predicates this assertion on its misconception that Norwood's action was for a wrongful dismissal and that, therefore, the proper measure of damages is the difference between the teacher's salary and her earnings in mitigation during the period of wrongful discharge.

Petitioner misstates the nature of this declaratory action, which is not one for damages, but rather is grounded on the automatic reemployment statute relating to non-tenured teachers and which sought a mandatory injunction reinstating her to the teaching position she held, as provided by the statute. The award of back pay and fringe benefits follows by operation of law upon her reinstatement. We find petitioner's argument to be without merit.

We affirm the judgment of the court of appeals.