**Cara SAJKO, Appellant,**

v.

**JEFFERSON COUNTY BOARD OF EDUCATION; Jefferson County Schools; and Stephen Daeschner, Superintendent, Appellees.**

No. 2009–SC–000021–DG.

Supreme Court of Kentucky.

June 17, 2010.

Jeffrey Scott Walther, William Scott Hunt, Walther, Roark & Gay, PLC, Lexington, KY, Counsel for Appellant.

Byron Edward Leet, Lisa Catherine Dejaco, Sara Christine Veeneman, Wyatt, Tarrant & Combs, LLP, Louisville, KY, Counsel for Appellees.

Opinion of the Court by Justice NOBLE.

This case presents a question of interpretation of a notice provision in KRS 161.790(3), which governs dismissal proceedings against public school teachers. The provision requires a teacher wishing to challenge her dismissal to "notify" and "give notice" to two school officials of her

intention to do so within ten days of receiving the required letter notifying her of the dismissal. If notice is timely, then the teacher gets an administrative hearing. Otherwise, the dismissal is effective by operation of KRS 161.790(3) on the tenth day. The specific question before us is whether the timing statute is satisfied by the mailing, rather than receipt, of the teacher's notice within the ten days.

This Court holds that the statute requires receipt. Therefore, the Court of Appeals is affirmed in part and reversed in part and this matter is remanded to the administrative tribunal for further findings of fact as to the date of Appellant's receipt of her dismissal letter.

## I. Background

### A. Statutory Framework

Before getting into the facts of this case, a short description of the dismissal process will prove useful as a framing device. The termination process is laid out in KRS 161.790. Subsection (1) of the statute states that a teacher's contract shall remain in effect except for good cause, which includes insubordination and conduct unbecoming a teacher, among other things. When a superintendent decides to dismiss a teacher for cause, he must detail in writing the charge against the teacher supporting the termination. KRS 161.790(3). The same subsection then includes the following language, which is the crux of this case: "The teacher may within ten (10) days after receiving the charge notify the commissioner of education and the superintendent of his intention to answer the charge, and upon failure of the teacher to give notice within ten (10) days, the dismissal shall be final." KRS 161.790(3).

"Upon receiving the teacher's notice of his intention to answer the charge, the commissioner of education shall appoint a three (3) member tribunal" out of a pool of pre-qualified and trained members to hear the matter. KRS 161.790(4). The hearing on the matter "shall begin no later than forty-five (45) days after the teacher *files* the notice of intent to answer the charge." *Id.* (emphasis added). The tribunal is the trier of fact in the case. KRS 161.790(6). It operates by majority vote and must render its decision no later than five days after the hearing. KRS 161.790(7). In addition to the three-person tribunal, the commissioner also appoints a hearing officer, who handles dispositive prehearing motions, KRS 161.790(5), and who shall preside at the hearing to rule on procedural matters, KRS 161.790(6). Basically, the hearing officer is an attorney who acts as the judge in the matter and the tribunal serves as the jury.[1]

### B. Factual and Procedural Background

This case arises from a hearing under this statutory scheme in which the Appellant, Cara Sajko, challenged the termination of her employment as a science teacher at Male Traditional High School in Jefferson County. The superintendent of the Jefferson County Schools had sought to terminate Appellant's employment because of numerous alleged incidents of insubordination and conduct unbecoming a teacher that had led to multiple written reprimands and warnings and two suspensions. The superintendent informed Appellant of his intention to terminate her employment by a letter dated March 28, 2005, which detailed the history of alleged incidents.

1. For an extended discussion of how the process works, and how it has changed since the enactment of KERA, see generally *Fankhauser v. Cobb,* 163 S.W.3d 389 (Ky.2005).

The letter was hand-delivered to Appellant's home. According to the person who delivered the letter, Appellant received it the same day, March 28. According to Appellant's collective bargaining representative, Appellant admitted that she received the letter on March 28. Appellant, however, has denied that she received the letter that day.

Appellant employed an attorney on April 6. Her counsel claimed that he tried to contact the general counsel for the Jefferson County Schools that day and the next, but the general counsel was out of the office. After business hours on April 7, Appellant's counsel faxed to the general counsel's office a copy of a letter giving notice under KRS 161.790(3) of Appellant's intention to answer the charges against her. Copies of this letter were also mailed to the Schools' counsel and the Commissioner of Education that same day, but they were not received until April 8. It is the letter to the commissioner that is at issue in this case.

Prior to the hearing on the matter, the Schools moved to dismiss on the ground that Appellant's notice of her intention to answer the charges was untimely because she did not "within ten (10) days after receiving the charge notify the commissioner of education and the superintendent of [her] intention to answer the charge," KRS 161.790(3), and that as a result the dismissal became final by operation of law, since "upon failure of the teacher to give notice within ten (10) days, the dismissal shall be final," *id.*

The hearing officer declined to decide whether the notice was received by the commissioner within ten days, in part by not making a factual finding as to when the Appellant received the letter. He did, however, note that affidavits from the person who delivered the letter and Appellant's own collective bargaining represen-

tative indicated that Appellant received the letter on March 28. He also noted that Appellant denied these claims. He then stated, "If recognition of this day [March 28] results in a ruling that petitioner gave her notice one day late, then a preliminary evidentiary hearing would need to be held regarding Petitioner's denial of the affidavit assertions."

The hearing officer went on to deny the motion. He held that KRS 161.790(3) was ambiguous as to whether the notice it required had to be received by the superintendent and commissioner within ten days or simply put in the mail. After examining various policies apparent from the statute, he decided that under the statute, "teachers should be permitted to mail...their protest of a superintendent's disciplinary action on the tenth day after receiving the charges." Because there was no question that the notice was at least mailed within ten days, the officer held it was timely filed and allowed the matter to proceed to a hearing before the tribunal.

The hearing lasted eight days, during which thirty witnesses, including the Appellant, testified. The tribunal concluded that the Appellant was not guilty of conduct unbecoming a teacher but was guilty of insubordination. The tribunal also found that the Appellant used inappropriate teaching methods, including berating and demeaning her students, ignoring parents' concerns, and failing a large number of students. Based on these findings, the tribunal concluded that the superintendent's decision to terminate the Appellant's employment was appropriate and affirmed the decision, in effect, reaching the same result as if she had not timely filed her notice but with the added right of judicial review of the decision on the merits.

Both sides sought review by the Jefferson Circuit Court, which upheld the tribunal's decision in all respects. As to the issue currently before this Court, the circuit court found that the superintendent's letter was delivered on March 28 and that the notice in response was due April 7, but that there was "no basis to reverse the tribunal's determination" and that the "tribunal was within its statutory authority to accept and hear Sajko's appeal in the manner it stated."

The Court of Appeals affirmed and upheld the dismissal also, albeit for different reasons than the circuit court. Rather than addressing the merits of Appellant's claims, the Court of Appeals addressed only whether the notice of Appellant's intention to answer the charges against her was timely filed. The court concluded that the superintendent's letter had been hand-delivered to the Appellant on March 28. The court also held that KRS 161.790(3) required that the notice be received within the ten-day period. Because the notice was not received by the commissioner until the eleventh day, the court concluded that the notice was untimely and the tribunal therefore had no jurisdiction to hear the matter and the dismissal would therefore stand by operation of law.

This Court granted discretionary review to decide whether the tribunal erred in holding that KRS 161.790(3) does not require receipt of the notice within ten days of the teacher's receipt of the superintendent's letter of dismissal.

## II. Analysis

■ Appellant's argument is premised on the claim that the statute is ambiguous as to whether mailing or receipt is necessary to invoke the administrative tribunal's jurisdiction. This claim was in fact the predicate for the hearing officer's decision. However, though the case law in Kentucky addressing this issue is sparse and not directly on point, there is a clear majority rule for interpreting notice language like that in this statute. In light of this rule, this Court cannot conclude that the statute is ambiguous. A review of Kentucky's case law and the law in other jurisdictions establishes that the terms "give notice" and "notify" have a commonly understood meaning and therefore are not ambiguous.[2]

The parties have cited only one case from Kentucky's courts, *Energy Regulatory Commission v. Kentucky Power Co.*, 605 S.W.2d 46 (Ky.App.1980), interpreting similar language. This Court's independent research has revealed one other case, *Chambers v. City of Newport*, 101 S.W.3d 904, 906 (Ky.App.2002), which mentions the issue in dicta.

In *Kentucky Power Co.*, the court was tasked with interpreting KRS 278.410(1), which governs actions for review of administrative decisions by the Energy Regulatory Commission. The statute requires that "[n]otice of the institution of such action shall be given to all parties of record." Rather than serving a copy of the complaint on the Attorney General, who was a party at the administrative hearing, the Kentucky Power Co. simply notified his office by letter. The court noted that the "better practice" would be to name the Attorney General in the complaint itself, but that "[t]he minimum requirement is service of a copy of the complaint on all parties of record before the Commission."

---

**2.** Ordinarily, the hearing officer's determination of the meaning of the statute would be accorded so-called *"Chevron* deference" and would be binding on the courts so long as it is reasonable. *See Louisville/Jefferson County* *Metro Government v. TDC Group, LLC,* 283 S.W.3d 657, 661 (Ky.2009). Because the statute is not ambiguous, such deference is not appropriate in this case.

*Kentucky Power Co.,* 605 S.W.2d at 51. The court then went on to state:

> KRS 278.410(1) requires *the giving of notice,* that is actual notice, *at least the receipt* of a letter. There are striking similarities between the Kentucky statute and the case of *Baldwin v. Fidelity Phenix Fire Ins. Co. of New York,* 260 F.2d 951 (6th Cir.1958). In that case written notice was required with the necessary implication of receipt or delivery. We believe that *it is not the sending but the receipt of a letter that constitutes true notice.* 66 C.J.S. Notice § 18.
>
> The Consumer Protection Division of the Attorney General's Office became a party to the proceedings at the administrative level and as such is a necessary party in the reviewing process. It behooves those who seek review of administrative agencies to include all necessary parties when an appeal is undertaken. It is their responsibility to give notice by means of the issuance of summons of process, *or to demonstrate by other concrete evidence the receipt of notice,* so that all proper parties are fully apprised before the reviewing court and in position to participate in the entire appellate proceedings. *A certificate or affidavit of sending notice falls short.*

*Id.* at 51–52 (emphasis added).

The case is certainly not directly on point regarding the issue currently before this Court, since it did not involve a question of timing of the notice. Moreover, the quoted language is arguably dicta, since the court was reversing for other reasons (namely, because the commission had failed to make findings of fact in support of its decision). Nevertheless, the opinion seems quite clear that language like "notice shall be given" requires receipt of the notice, not just mailing.

This is especially clear when reviewing *Baldwin,* on which the Court of Appeals relied. *Baldwin* interpreted language in an insurance contract stating that "written notice shall be given." The Sixth Circuit read that language as follows:

> We cannot agree with appellants' contention that the notice is effective if mailed but not received. Notice by mail may have been, and doubtless was, contemplated under the policy, although personal notice of the happening of an accident was not excluded. *However, the term "written notice shall be given" carries with it the implication of receipt or delivery.* As pointed out in *Rapid Motor Lines, Inc., v. Cox,* 134 Conn. 235, 56 A.2d 519, 521, 175 A.L.R. 296 [ (1947) ], "One meaning of the verb 'give' is [ . . . ] 'to deliver or transfer; to [ . . . ] handover.'" *See Webster's New International Dictionary,* Second Edition, definitions of the word 'give.' As declared in the *McSparran* [*Fairfield Packing Co. v. Southern Mut. Fire Ins. Co.*] case, *supra,* 193 Pa. [184] 191, 44 A. [317] 318 [ (1899) ], "Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates. *It is not, therefore the sending, but the receipt, of a letter that will constitute notice* [ . . . ]." *Cf.* 66 C.J.S. Notice § 18, p. 663.

*Baldwin,* 260 F.2d at 953–54 (emphasis added).

The only other Kentucky case that this Court's research has revealed on this topic is *Chambers v. City of Newport,* 101 S.W.3d 904 (Ky.App.2002). The court was tasked with deciding whether the prospective running of time was keyed to mailing or receipt of notice, where the statute in question, KRS 91A.270(1), stated that a landowner had to file a complaint within 30

days of "the mailing" of a notice to him. The court held that mailing was the key under that statute. It distinguished *Kentucky Power Co.,* basically recognizing a distinction between the mailing and the giving of notice and stating,

> Contrary to appellants' contention, a different conclusion is not compelled by *Energy Regulatory Commission v. Kentucky Power Co.* In that case, the court merely indicated that if the running of time is calculated from the service of notice, "it is not the sending but the receipt of a letter that constitutes true notice." Similarly, a different result is not compelled by CR 6.05, which also pertains to the calculation of time "after the *service* of a notice" rather than after the mailing of the notice as here.

101 S.W.3d at 906 (citations omitted).

None of these cases is directly on point or directly binding on this Court's decision. However, they are persuasive authority. They appear to be the only authority in this jurisdiction on the topic, and all point toward distinguishing between mailing and receipt and reading the language in the teacher dismissal statute as requiring the latter.

This interpretation is consistent with the majority rule in interpreting similar language, which is that "[g]enerally, the law requires that notice be actually received in order to be effective." 66 C.J.S. *Notice* § 20 (2009). The specific discussion about receipt of notice in C.J.S. expands on this notion:

> A method of service of notice which is prescribed by statute must be followed. In such a case, the statute generally must be strictly complied with, especially where the notice affects property rights or where it is to form the basis of a suit. On the other hand, requirements as to notice are liberally construed where the method of giving notice is not prescribed.
>
> Nonetheless, where the giving of notice is required without provision as to the method, *actual notice is essential.* Moreover, in the absence of a statute providing otherwise, notice, particularly notice to one at a specified place, is not given until it is received by the person to be notified. Thus, *when a statute is silent as to how service is to be effectuated, written notice is deemed given only upon receipt.*
>
> Any of the various methods of service may be effective, *provided that the notice is actually received on or before the prescribed deadline.* Hand delivery is not the only constitutionally acceptable mode of serving notice; according to some authority, service of notice may be made by affixing a copy to the front door of the usual place of abode of the person who is to be served if no person to whom a copy may be delivered is found there.

*Id.* § 22 (footnotes omitted, paragraph break added, emphasis added); *see also* 58 Am.Jur.2d *Notice* § 26 (2002) ("Where a statute requires notice to be given, but does not specify the type of notice, actual personal notice is required, and the notice must be personally served on the person to be notified." (footnotes omitted)); *id.* § 30 (Where a statute requires that a notice must be served, the service must be personal, and, *absent contrary language in a contract, proper service implies its receipt.* When a statute requires that written notice be given, but does not specify how it must be given, the written notice is not effective until it is received. Any of the various methods of service may be effective *provided the notice is actually received on or before the prescribed deadline* " (footnotes omitted, emphasis added)); *id.* § 33 ("[W]here a statute, rule,

or contract merely states that written notice must be given, without stating how it is to be given, it is not enough that the notice is mailed. It must also be received. *The effective date of the notice is the day it is received, rather than the day it is mailed.*" (footnotes omitted, emphasis added))

The cases in other jurisdictions are even more explicit—especially in cases related to teacher dismissals. For example, in *School Dist. RE–11J, Alamosa County v. Norwood,* 644 P.2d 13 (Colo.1982), the Colorado Supreme Court addressed a statute that required a school seeking not to renew a teacher's contract to "cause[ ] written notice ... to be given to said teacher on or before April 15." The school in that case "argue[d] that the only reasonable meaning of the statutory words is that the mechanics of the giving of notice must be set in motion by April 15, and that the notice need not be received by the teacher by April 15." *Id.* at 15. The court held that receipt was necessary for the notice to be effective, reasoning as follows:

> It is the general rule that when a statute requires that written notice is to be given, but does not specify how it shall be given, the written notice is not effective until it is received. Thus, any of the various methods of service may be effective provided that the notice is actually received on or before the prescribed deadline. Although a statute may authorize service by mail which is generally held to be effective on the date of mailing, the mere mailing of a notice either by ordinary mail, or by certified or registered mail, unless specifically authorized by statute, is not effective until the notice is received. Here, when the school district's effort to personally deliver the notice of non-renewal to Norwood at the high school failed, it elected to effect delivery to her by certified mail. In doing so it misdirected the

notice and as a consequence the notice was not actually delivered until after the statutory deadline.

*Id.* at 15–16 (footnotes and citation omitted). The court distinguished another case involving late delivery of a notice where the person to whom notice was due was unavailable to receive it when service on him was attempted within the time period, holding an exception exists only "when a teacher frustrates the delivery by purposeful avoidance thereof." *Id.* at 16.

The Supreme Court of Ohio has also held that receipt of the notice is necessary in a similar case. *See State ex rel. Peake v. Board of Ed. of South Point Local School Dist.,* 44 Ohio St.2d 119, 339 N.E.2d 249 (1975). The court in that case addressed a statute that deemed a teacher to be automatically reemployed "unless the employing board ... gives such teacher written notice of its intention not to reemploy him on or before the thirtieth day of April." *Id.* at 251. The teacher in that case received the notice on May 2, and the court held it was untimely and ineffective because "(w)here a statute requires notice of a proceeding, but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement. ...Thus it would appear that where, as in this case, certified mail was employed to attempt the required notice, it became effective only at the time it was received." *Id.* (citations and quotation marks omitted, alteration in original).

The exception to this approach appears to be where the statute in question specifies the method of service. Where notice by mail is specifically authorized, deposit of the notice in the mail with a proper address and postage is sufficient. *See* 58 Am.Jur.2d § 32 (2002).

For example, when faced with interpreting the language in a contract saying "giv-

ing written notice thereof by mail to the other party," the Kansas Court of Appeals has held that putting the notice in the mail is sufficient. *See Macke Laundry Service Ltd. Partnership v. Mission Associates, Ltd.,* 19 Kan.App.2d 553, 873 P.2d 219, 222–24 (1994). In so holding, the court distinguished the case from another in which the notice provision was silent as to the method of service to be used and required receipt. The court ultimately settled on the following rule:

> "Where a statute or rule merely states that written notice shall be given, ordinarily mailing a notice is not alone sufficient; the notice must be received. When, however, a statute or rule does not merely state that written notice shall be given but also states that it may be given by mail, service is ordinarily accomplished by depositing the notice in the mail properly addressed and stamped."

*Id.* at 224 (quoting *Liberty Mut. Ins.Co. v. Caterpillar Tractor Co.,* 353 N.W.2d 854, 857 (Iowa 1984)).

At least one other state appears to have a broader rule, so that where mail is merely an allowable means of service (rather than the sole prescribed method), receipt is not necessary for a notice to toll a time limitation period. *See Lindsey v. South Carolina Tax Com'n,* 323 S.C. 57, 448 S.E.2d 577, 578 (S.C.App.1994) ("Where service by mail is permitted, it is complete when the document is deposited with the United States Postal Service, properly addressed with sufficient postage."). However, the statute in question specifically stated that mailing was one of two allowable methods of service of notice (the other being personal service), rather than leav-

ing the method open, as in the case before this Court. Thus, it is arguable that the statute in *Lindsey* could fall under the rule expressed in *Macke Laundry Service Ltd. Partnership and Liberty Mutual Insurance Co.* described above. Given that same court's decision in another case where the notice provision was silent as to the method, this seems likely, especially since the other case relied in part on *Norwood* and *Liberty Mutual Insurance Co. See Cincinnati Ins. Co. v. South Carolina Second Injury Fund,* 297 S.C. 372, 377 S.E.2d 130, 131 (S.C.App.1989) ("In the absence of binding authority, we adopt the well-recognized rule most recently stated by the Colorado Supreme Court: It is the general rule that when a statute requires that written notice is to be given, but does not specify how it shall be given, the written notice is not effective until it is received.' *School District Re–11J, Alamosa County v. Norwood,* 644 P.2d 13, 15 (Colo. 1982); *accord, Liberty Mut. Ins. Co. v. Caterpillar Tractor Co.,* 353 N.W.2d 854 (Iowa 1984). Counsel for Cincinnati Insurance has cited no case from any state holding to the contrary." (some citation omitted)).

■ These cases outline a consistent rule, or at least a clear majority rule. Where a statute uses language requiring the giving of notice and does not specify a means, receipt of the notice is necessary.[3]

This Court agrees that the majority rule is appropriate in light of the statutory language. The notice provision before this Court does not specify the method of delivery. Thus, while mail would be an allowable method, it is not required; nor is it one of a limited number of methods prescribed under the statute. The notice can

---

3. This case does not present the related questions of whether constructive receipt or where the recipient of the notice is unavailable are sufficient to satisfy the notice statute. How-

ever, the cases from other jurisdictions indicate that such notice is normally effective, even when actual receipt does not occur within the prescribed timeframe.

be given by other legally recognized means, including hand delivery (as was accomplished by the Schools in this case) or facsimile (as was accomplished as to the superintendent in this case). In fact, the statute does not even require written notice, so arguably a telephone call or email would suffice, though we need not so hold to decide this case.

Basically, the generic notice statutes and requirements—that is, those that do not spell out receipt or the method of notice to be employed—are interpreted in a light most favorable to the person to whom notice is due. The policy behind this approach is that a person should be able to rely on the statutory time period and is thus entitled to repose if no timely notice is received.

The notice in this case was due to the superintendent and the commissioner, not to Appellant. (In fact, she had already received the notice due to her and there is no question she received it.) If the notice is not timely, the superintendent does not have to prepare a defense of the dismissal decision and the commissioner does not have to set the hearing machinery into motion. Both officers, then, have a legitimate interest in repose. Thus, when interpreted in a light most favorable to the superintendent and commissioner, delivery to both is necessary to comply with the statute.

Additionally, requiring receipt—and making that a bright line rule—serves important policy interests unique to the field of education. When a superintendent decides to dismiss a teacher, time is of the essence.

Frequently, such dismissals will come at or near the end of the school year, so that any challenge by the teacher can be addressed over the summer break and before the next school year starts. The approximate two-month gap between school years offers little time to hold the hearing to determine whether a teaching position will be vacant and need filling by the beginning of the next year. This concern explains why the teacher has such a short period of time to give notice to begin with.

Where, as in this case, the dismissal comes in the middle of a semester, time is even more important. A teacher can be suspended immediately, pending final action on the dismissal. *See* KRS 161.790(8). A superintendent could go ahead and hire a new teacher to fill the position, but this would court disaster as the tribunal could reverse the superintendent's decision. Most likely, rather than hiring a new, permanent teacher, the superintendent would rely on substitute teachers until the dismissal was finalized; otherwise he runs the risk of having hired a teacher who no longer has a position in the case of a reversal. Yet, reliance on substitute teachers for an extended period of time is not ideal. Thus, the shorter the period until a finalized decision, the better. A strict notice requirement would foster the valid interest in arriving at a decision quickly, either by shortening the period of uncertainty (as to whether the teacher will challenge or whether the superintendent's decision will be upheld) or by lessening the number of challenges, since late ones cannot be pursued at all.

Appellant argues that such a strict compliance rule is unfair, at least to a person like a teacher as an unsophisticated participant in the combined administrative and judicial systems. She notes that the parties in other Kentucky cases discussed above are sophisticated business entities like energy or insurance companies, and thus treating "unsophisticated" teachers differently would be just. Yet, sophistication and knowledge of the law does not somehow give corporations the ability to better understand ambiguous statutory language, which is exactly what Appellant claims exists in KRS 161.790. And as the

cases from other jurisdictions show, the strict rule is frequently applied even to cases involving teachers.

She also argues that the Court should construe the statute liberally, thereby allowing her claim, out of sheer fairness. But because the right to challenge the dismissal is a statutorily created administrative right, strict compliance and construction of the enabling statute is required. *See Board of Adjustments of City of Richmond v. Flood*, 581 S.W.2d 1, 2 (Ky.1978) ("There is no appeal to the courts from an action of an administrative agency as a matter of right. When grace to appeal is granted by statute, a strict compliance with its terms is required. Where the conditions for the exercise of power by a court are not met, the judicial power is not lawfully invoked. That is to say, that the court lacks jurisdiction or has no right to decide the controversy."); *Metro Medical Imaging, LLC v. Commonwealth*, 173 S.W.3d 916, 917 (Ky.App.2005); *Kentucky Unemployment Ins. Com'n v. Providian Agency Group, Inc.*, 981 S.W.2d 138, 139 (Ky.App.1998).

This, however, does not entirely resolve this case. Though the circuit court and Court of Appeals both assumed that Appellant received her dismissal letter on March 28, no finding of fact was ever made in that regard by the hearing officer. In fact, the hearing officer expressly declined to make such a finding of fact and noted that if the case turned on the date of receipt of that letter, a further evidentiary hearing would be necessary. He proceeded on the legal theory that notice was effective upon mailing, which this Court has now found to be error. Neither the circuit court nor the Court of Appeals, as reviewing courts in this instance, were equipped or allowed to make a factual finding about Appellant's receipt of her dismissal letter. Consequently, the date Sajko received her dismissal letter is a crucial fact in determining if her notice of intention to challenge her dismissal was timely. The appropriate remedy in such a case is to remand the case to the tribunal and hearing officer to make the necessary factual finding.[4]

If, on remand, the hearing officer finds that Sajko received her dismissal letter one day later than March 28, 2005, then as a matter of law, receipt would be timely, leaving only the merits appeal which the Court of Appeals did not address. In that event, the action would return to the Court of Appeals for a ruling on the merits of her appeal.

### III. Conclusion

This Court therefore holds that KRS 161.790(3) requires receipt of the teacher's notice within the ten-day period. This Court, however, cannot determine whether Appellant complied with the statute because there is a question of fact about when the ten-day period began running. Thus, the judgment of the Court of Appeals is affirmed in part and reversed in part, and this matter is remanded to the administrative tribunal and hearing officer to make the necessary findings of fact and for any further proceedings consistent with this Opinion that may be necessary.

All sitting. All concur.

---

4. That this case has come all the way to this Court and yet still cannot receive a final determination demonstrates the importance of making factual findings at the administrative level. While perhaps understandable, the hearing officer's attempt to avoid the question by resorting to interpreting the statute in a broad manner, has had the effect of undermining judicial economy.